**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**


JUSTIN TRAVIS PENNINGTON,     *
       Plaintiff,     *
v.                    *    Civil Action No. PWG-11-3243
         *
         *
STATE OF MARYLAND, ET AL.,     *
       Defendants.     *

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, Justin Travis Pennington, through counsel, Nancy S. Forster, and pursuant to 42 U.S.C.

§1983, submits this Amended Complaint for Declaratory and Injunctive Relief challenging the

constitutionality of the Maryland Sex Offender Registry ("MSOR"), codified in Md. Ann. Code, Criminal

Procedure Article, §11-701, *et seq* (Supp. 2013), both facially and as-applied.  This Court has subject

matter jurisdiction over Mr. Pennington's federal constitutional issues pursuant to 28 U.S.C. §§1331

and 1343 and has supplemental jurisdiction under §1367.  Jurisdiction to order injunctive and

declaratory relief arises pursuant to 42 U.S.C. §1983.

## PARTIES

1.  Mr. Pennington is a resident of Cecil County, Maryland, who, pursuant to the October 1, 2010

change in the laws governing the MSOR, is now required to register in person, every six months, with

his local law enforcement unit for a period of fifteen years.  Md. Ann. Code, Crim. Pro. Art. §§11-701,

11-704, 11-707.  He has been designated as a Tier I sex offender.

2. Defendant, Department of Public Safety and Correctional Services, pursuant to §§11-701 - 11-724 of the Criminal Procedure Article of the Annotated Code of Maryland, is the state agency responsible for maintaining a central registry of sexual offenders, receiving and distributing communications relating to the registration of sexual offenders, and making information about registrants available to the public.

3. Defendant, Douglas Gansler, Attorney General of Maryland, is the authorized legal representative for the State of Maryland and is responsible for the enforcement of laws throughout the State.

4. Defendant, Elizabeth Bartholomew, Manager of the MSOR for the Maryland Department of Public Safety and Correctional Services has primary administrative oversight of the MSOR.  She is sued in her official capacity.

5. Defendant, Barry A. Janney, is the Sheriff of Cecil County, responsible for the enforcement of the MSOR requirements in Cecil County.   He is sued in his official capacity.

6. Defendant, Michael Cunningham, is in charge of the Megan's Law Unit of the Cecil County Sheriff's Office which administers and processes the registration statements of those on the MSOR in Cecil County.  He is sued in his official capacity.

## THE MSOR LAW

7. Maryland first enacted its sex offender registry law in 1995.  Md. Ann. Code, Art. 27, §692B

(1995 Repl. Vol.). It contained a single category of offender known as a "child sexual offender" which

was defined to include those convicted of violating any one of seven listed crimes. None of the listed

crimes included possession of child pornography.

Five of those crimes applied only if the victim was under the age of 15.  Conviction for one of the

crimes, fourth degree sexual offense, required registration only if ordered by the court.  §692B(a)(2).

Registration statements included the child sexual offender's name, address, place of employment,

photograph, fingerprints, date of conviction, jurisdiction of conviction, a list of any aliases, and the

offender's social security number. §692B(g). The child sexual offender was required to register with

his local law enforcement agency annually for ten years and was required to report a change of

address within seven days.  §692B(i) and (h).  The local law enforcement agency was required to

send "written notice of the registration statement to the county superintendent,…in the county where

the child sexual offender will reside" who, in turn, was required to send written notice of the

registration statement "to the principals of the schools within the supervision of the superintendent."

§692B(d).  They also had to provide the Department of Public Safety and Correctional Services

(hereinafter DPSCS), a copy of the statement.  The local law enforcement agency had discretion to

provide notice of the registration statement to a community organization, a religious organization, and

"[a]ny other organization that relates to children or youth" "if the agency determines that such notice is

necessary to protect the public interest."  §692B(d).  Local law enforcement was also authorized to

provide a copy of the registration statement to a person who provided a written request and explained

the reason for the request.  §692B(g)(4)(i) and (ii).  There was no other form of public notification in

the statute; especially no publication on the internet.  Failure to register as required could result in a

misdemeanor conviction subject to not more than three

years imprisonment.  §692B(k).  This new law applied prospectively to those who committed offenses

after October 1, 1995.

   8.  The legislature re-enacted the registry law in 1996 but redesignated it as §792.  All provisions

from the 1995 enactment remained the same.

   9.  In 1997, the legislature expanded the category of offenders to include child sexual offenders,

offenders, sexually violent predators, and sexually violent offenders.  §792(a)(2), (a)(6), (a)(10), and (a

(11).  A sexually violent predator was one convicted of a second or subsequent sexually violent

offense and who had been determined to be "at risk of committing a subsequent sexually violent

offense."  §792(a)(11).  The number of crimes for which one could be required to register was

increased to 30 but still did not include possession of child pornography.   The contents of the

registration statements remained unchanged.  §792(d).  The frequency and duration of registration

depended on the category one was placed into:  child sexual offenders had to register annually for

ten years; offenders and sexually violent offenders had to register annually for an unlimited time;

sexually violent predators had to register every 90 days until a court deemed them no longer to be

within the sexually violent predator category.  §792(h).  Additionally, child sexual offenders had to

register in person as opposed to through the mail.  §792(c), (h).  Dissemination of registration

statements was also widened.  In addition to the dissemination as existed in the 1996 law, DPSCS

was required to maintain a central registry and transmit the registration information to the Federal

Bureau of Investigation.  The new law required DPSCS to release the statements to the public "in

accordance with regulations established by the Department."  §792(d).  Further, local law

enforcement agencies were

required to provide the registration statements to anyone who provided a written request for the

information.  §792(d)(6).  And finally, local law enforcement was permitted to provide notice of a

registration statement "to any person or organization that the Department or local law enforcement

agency determines may serve to protect the public concerning a specific registrant if the Department

or the agency determines that such notice is necessary to protect the public."  §792(f)(3).  The

requirements under the 1997 law were prospective only from its effective date of July 1, 1997.

   10.  The 1998 law changed very little from the 1997 version except to correct the lack of a fixed

period of duration for registering for offenders and sexually violent offenders.   It set the duration of

registration for an offender and a sexually violent offender at annually for ten years.  §792(h)(3).

   11. The 1999 law drastically changed the restrictions and burdens placed on registrants, however,

the category of offenders remained unchanged.  Child sexual offenders and sexually violent offenders

were required to register in person annually for ten years or for life if convicted of specified crimes.

§792(d)(2).  Offenders had to register annually for ten years.  §792(d)(3).  Sexually violent predators

had to register every 90 days for life.  §792(d)(5).  In addition to all previous information required to be

provided, sexually violent predators also had to provide "[i]dentifying factors, including physical

description, anticipated future residence, offense history and documentation of treatment received for

a mental abnormality or personality disorder."  §792(e)(2).  Lastly, the new law provided that DPSCS

"shall release registration statements or information concerning registration statements to the public

and may post on the Internet a current listing of each

registrant's name, offense and other identifying information…"  §792(j)(6).  Further, local law

enforcement was required to provide notice of a registration statement "to any person that the

Department or local law enforcement agency determines may serve to protect the public concerning a

specific registrant if the department or the agency determines that such notice is necessary to protect

the public."  §792(j)(7).

12.  The registry laws were recodified in 2001 and placed into the Criminal Procedure Article, §11-

701 *et seq.*  The significant change to the law in 2001 concerned its retroactive application to those

who committed offenses prior to October 1, 1995.  Specifically, child sexual offenders who committed

offenses on or before October 1, 1995, had to register if they were under custody or supervision on

October 1, 2001.  Md. Ann. Code, Crim. Proc. Art. §11-702.1(b).

13.  The next major change to the registry laws occurred in 2009 when juvenile sex offenders were

added to those who had to register.  §11-707(a).  Further, registration statements had to include, in

addition to all previous information, a "list of any aliases, former names, electronic mail addresses,

computer log-in or screen names or identities, instant-messaging identities, and electronic chat room

identities that the registrant has used;…any other name by which the registrant has been legally

known; a copy of the registrant's valid driver's license or identification card; the license plate number

and description of any vehicle owned or regularly operated by the registrant; and the registrant's

signature."  §11-706(a)(1) through (12).   The frequency of registration also increased with child sexual

offenders having to register in person every six months for ten years; offenders and sexually violent

offenders having to register in person every six

months for ten years or life in some cases; and sexually violent predators having to register every

three months for life.  §11-707(a)(3) and (4).  All registrants had to provide updated photographs every

six months.  Significantly, the 2009 law allowed the public to "electronically transmit information the

public may have about a registrant" to DPSCS, to a parole agent of the registrant, or to local law

enforcement.  §11-717(c).  The physical movements of registrants was also burdened by the new law

that allowed registrants to enter real property where the registrant was a student or where the

registrant's child was a student or received child care only if the registrant was given "specific written

permission of the Superintendent of Schools, the local school board, the principal of the school, or the

owner or operator of the registered family day care home…as applicable" and the registrant "promptly

notifies an agent or employee of the school, home, or institution of the registrant's presence and

purpose of visit."  §11-722(a).  Further, a registrant was prohibited from entering onto real property

used for public or nonpublic elementary or secondary education, or on property where is located a

family day care home, a child care home or institution.  §11-722(b).  Moreover, a person who "enters

into a contract with a county board of education or a nonpublic school" was prohibited from

"knowingly employ[ing] an individual to work at a school if the individual is a registrant."  §11-722(c).

One who entered into such a contract could be convicted and receive a five year sentence.

   14.  Effective October 1, 2010, the law changed to provide tiers of offenders as opposed to

specific classifications in compliance with the requirements of the federal Adam Walsh Act.  Tier I

offenders had to register every six months for 15 years.  Tier II offenders must register in person every

six months for 25 years; and Tier III offenders had

to register in person every three months for life.  §11-707(a).  Only Tier I offenders were permitted to

petition the court for a reduction in the registration term and only after remaining on the registry for 10

years.  The 2010 law increased the burdens placed on registrants by requiring that they provide three

days' notice after changing addresses, applying for a driver's license, changing vehicle or license plate

information, changing electronic mail or internet identifiers, changing a home or cell phone number or

changing employment.  §11-705(c), (e).  A registrant must notify local law enforcement if he "obtains

a temporary residence or alters the location where the registrant resides or habitually lives for more

than 5 days or when the registrant will be absent from the registrant's residence or location where

[he] habitually lives for more than 7 days."  §11-705(i).  This notice must be in writing and must be

provided prior to the change in residence or location.  The 2010 law added to the registration

statement information such as a copy of the registrant's passport or immigration papers, any

professional licenses held, the license plate number, registration number and description of any

vehicle, including all motor vehicles, boats, and aircraft owned or regularly operated by the registrant,

the permanent or frequent addresses or locations where all vehicles are kept, all landline and cellular

telephone numbers, a copy of the registrant's driver's license, the criminal history of the registrant

including the dates of all arrests and convictions, as well as parole, probation status, and any

outstanding warrants.  §11706(a).

   15.  The 2013 legislative session saw further changes to the MSOR scheduled to go into effect on

January 1, 2014.  The DPSCS will be required to provide, on a weekly basis, a list of all registrants to

the State Department of Education in a format that can be cross-

referenced to all licensed child care facilities and informal child care facilities.  The law further prohibits

any registrant from entering onto property where there are child care facilities or where informal child

care will be provided.

**FEDERAL SEX OFFENDER REGISTRATION AND NOTIFICATION ACT (SORNA)**

16.  In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent

Offender Registration Program which conditioned receipt of law enforcement funds on a state's

adoption of federal sex offender registration guidelines.  The Wetterling Act allowed states to use their

discretion in deciding whether or not to allow disclosure of a registrant's information to the public.

17.  In May of 1996, Congress renamed and amended the Wetterling Act.  It was renamed

Megan's Law and amended the prior discretionary privilege to disclose offender information to the

public to make it mandatory.

18.  On July 27, 2006, the Adam Walsh Child Protection and Safety Act of 2006 was passed by Con

gress.   Title I of the Walsh Act, entitled the Sex Offender Registration and Notification Act ("SORNA")

, according to the U.S. Attorney General, was created to "strengthen and increase the effectiveness of

sex offender registration and notification for the protection of the public, and to eliminate potential

gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt

to evade registration requirements or the consequences of registration violations." ".

SORNA makes it a crime for a person "who is required to register under the [Act]" and who "travels in

interstate or foreign commerce" to knowingly "fai[l] to register or update a registration...." . Congress cod

ified SORNA's registration requirement in  and granted the Attorney General "the authority to specify

the applicability of the [registration] requirements of this subchapter to sex offenders convicted before

the enactment of this chapter." . On February 28, 2007, the Attorney General announced an Interim

Rule stating that the "requirements of [SORNA] apply to all sex offenders including sex offenders convi

cted of the offense for which registration is required prior to enactment of [the] Act" . In December of

2010, the Attorney General issued a Final Rule, which became effective on January 28, 2011. *See* App

licability of the Sex Offender Registry Act, 75 Fed.Reg. 81849–50 (Dec. 29, 2010) (to be codified at 28

C.F.R. pt. 72). "By this rule, the Department of Justice [finalized] an interim rule specifying that the

requirements of [SORNA] ... apply to all sex offenders, including sex offenders convicted of the

offense for which registration is required before the enactment of [the] Act." *Id.*

### FACTS OF MR. PENNINGTON'S CASE

20.  Mr. Pennington, a Maryland resident, pleaded guilty on November 1, 2005 before this Court to

a single count of possession of child pornography in violation of 18 U.S.C. §2252(a)(5)(B).  This Court

sentenced Mr. Pennington, on February 3, 2006, to twenty-nine (29) months' imprisonment, and thirty-

six (36) months of supervised release.  Mr. Pennington was released from prison on April 29, 2008

and, as a condition of his supervised release, Mr. Pennington was required to register as a sex

offender.  As of the

date of the filing of this Amended Complaint, Mr. Pennington has successfully completed the terms of

his supervised release and is no longer under any federal or state supervision.

21.  As Defendants concede in their Memorandum in Support of Defendants' Motion to Dismiss Or,

in the Alternative, Motion for Summary Judgment, the Maryland criminal equivalent of 18 U.S.C.

§2252(a)(5)(B) is found at Md. Ann. Code, Criminal Law Article, §11-208 which prohibits possession

of child pornography.  (Defendants' Memorandum at 3).

22.  Violation of §11-208 was *not* an offense for which registration as a sex offender was required

in Maryland until October 1, 2010 when the law was amended to include this offense as one for which

a defendant would be required to register as a Tier I sex offender.  Thus, when Mr. Pennington

committed his offense, was convicted, and was sentenced, Maryland law did not require him to

register as a sex offender.

23.  As ordered to do so by his probation agent, Mr. Pennington complied with all requirements of

registration from April 29, 2008 through October 11, 2012.  On October 11, 2012, Mr. Pennington

registered with the local law enforcement unit in Cecil County, where he resides; however, pursuant to

this Court's Order of October 4, 2012, Mr. Pennington did not have to provide "those past internet

identifiers not previously disclosed" to the MSOR.  Since October 11, 2012, Mr. Pennington has

continuously registered with the MSOR without disclosing past internet identifiers not previously

disclosed.

**COUNT 1:  VIOLATION OF U.S. CONSTITUTIONAL AMENDMENT ARTICLE I, §10, AND THE MARYLAND DECLARATION OF RIGHTS ARTICLE 17, PROHIBITING *EX POST FACTO* LAWS.**

24. Mr. Pennington incorporates by reference all allegations in the preceding paragraphs 1 through 2

3.

25.  At the time of the commission of the offense by Mr. Pennington, there was no requirement that

he register as a sex offender under the MSOR law.

26.  Through both intent and effect, the MSOR law is punitive.

27.  Maryland's highest court, the Court of Appeals, on March 4, 2013 in *Doe v. Department of*

*Public Safety and Correctional Services*, 430 Md. 535, 62 A.3d 23 (2013), found that retroactive

application of the MSOR law violates Article 17 of the Maryland Declaration of Rights because the

Article "extends broadly to any law passed after the commission of an offense which ... in relation to

that offense, *or its consequences,* alters the situation of a party to his disadvantage [.]"  *Id.* at 554.

28.  Because the offense for which Mr. Pennington was convicted was not one requiring

registration at the time he committed it, the retroactive application of the MSOR law after the offense

was added, clearly altered Mr. Pennington's situation to his disadvantage and constitutes punishment.

29.  SORNA cannot constitutionally be applied to Mr. Pennington and imposes no independent

obligation on Mr. Pennington to register.  42 U.S.C. §16925(d) expressly states that "[t]he provisions of

this title that are cast as directions to jurisdictions or their officials constitute, in relation to states*, only*

*conditions required to avoid the reduction of  Federal funding under this section."* In the Office

of Sex Offender Sentencing,

Monitoring, Apprehending, Registering, and Tracking, U.S. Department of Justice, Sex *Offender*

*Registration and Notification in the United States:  Current Case Law and Issues* (July 2012), the

Department states "[o]ver the last two decades Congress has enacted various measures setting

'minimum standards' for jurisdictions to implement in their sex offender registration or notification

systems….If a State, Tribe or Territory chooses to refrain from substantially implementing SORNA's

standards, the jurisdiction risks losing 10 percent of its Edward R. Byrne Justice Assistance Grant

(Byrne JAG) funds."  And, more importantly, the Department concedes that "a jurisdiction will not

register an offender ***unless that jurisdiction's laws require that the offender be registered."***  (emph

asis in original).  Thus, the decision in Doe precludes any independent obligation to register under

SORNA.

   30.  The MSOR law imposes retroactive criminal punishment on Mr. Pennington contrary to the

United States Constitution's ban against *ex post facto* laws and in contravention of Article 17 of the

Maryland Declaration of Rights prohibition on *ex post facto* laws, and is thus unconstitutional as

applied to Mr. Pennington.

   31.  Mr. Pennington has been, or will imminently be, subject to irreparable injury by this violation of

the prohibitions against *ex post facto* laws, and he is entitled to declaratory and injunctive relief.

**COUNT 2:  VIOLATION OF MARYLAND CONSTITUTION DECLARATION OF RIGHTS ARTICLE**

**17 PROHIBITING *EX POST FACTO* RESTRICTIONS.**

32. Mr. Pennington incorporates by reference all allegations in the preceding paragraphs 1

through 31.

33.  The second clause of the Maryland Declaration of Rights Article 17 provides, "[n]or shall any

retrospective oath or restriction be imposed, or required."  Thus, Article 17 is not limited solely to

retroactive punishment but also prohibits retroactive restrictions.  The MSOR is composed of nothing

but restrictions.  As such, retroactively applying these restrictions against Mr. Pennington violates the

second clause of Article 17.

34.  At the time of the commission of the offense by Mr. Pennington, there was no requirement that

he register as a sex offender under the MSOR law and thus, none of the law's numerous restrictions

applied to him.

35.  Mr. Pennington has been, or will imminently be, subject to irreparable injury by this violation of

the Maryland Constitution, Declaration of Rights Article 17 and he is entitled to declaratory and

injunctive relief.

**COUNT 3:  VIOLATION OF U.S. CONSTITUTIONAL AMENDMENT I AND THE MARYLAND**

**DECLARATION OF RIGHTS ARTICLE 40, FREEDOM OF SPEECH.**

36.  Mr. Pennington incorporates by reference all allegations in the preceding paragraphs 1

through 35.

37.  §11-706 of the MSOR law requires Mr. Pennington to provide his "electronic mail addresses,

computer log-in or screen names or identities, instant-messaging identities, and electronic chat room

identities" that he has used or will use.

38.   42 U.S.C. §16915(a) requires that Mr. Pennington disclose "those Internet identifiers the sex

offender uses or will use of any type that the Attorney General determines to be appropriate…"  The

statute defines Internet identifiers as "electronic mail

addresses and other designations used for self-identification or routing in Internet communication or

posting."

39.  These provisions violate the First Amendment to the U.S. Constitution and Article 40 of the

Maryland Declaration of Rights, each of which protects the right to free speech because the provisions

are vague, overbroad and burden speech without being appropriately tailored to the government's

stated goals.  The provisions also chill Mr. Pennington's right to engage in anonymous speech.

40.   Mr. Pennington has been, or will imminently be, subject to irreparable injury by this violation

of the United States Constitution and the Maryland Declaration of Rights and he is entitled to

declaratory and injunctive relief.

**COUNT 4: VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

41. Mr. Pennington incorporates by reference all allegations in the preceding paragraphs, 1

through 40.

42.  Requiring Mr. Pennington to provide all previously used internet identifiers, as required by

MSOR, will violate Mr. Pennington's Fifth Amendment privilege against being compelled to be a

witness against himself because compliance with the statute may possibly result in future criminal

proceedings.  Should he not comply with this requirement, Mr. Pennington is subject to charges of

failing to register in accordance with the law.

43.   Mr. Pennington has been, or will imminently be, subject to irreparable injury by this violation an

d he is entitled to declaratory and injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Pennington respectfully prays that the Court grant him the relief requested:

1. That this Court determine and adjudicate the duties of the parties with respect to registering as

a sex offender;

2. That this Court determine that Mr. Pennington does not have to register as a sex offender;

3.  That this Court declare that, as applied to Mr. Pennington, MSOR and SORNA are unconstitutional;

4.  That this Court enjoin Defendants from including Mr. Pennington on the Maryland Sex Offender

Registry, or from taking any other actions consistent with treating him as a registered sex offender;

5.    That this Court grant such other and further relief it finds equitable.


_____/s_____
Nancy S. Forster
Federal Bar No. 30194
Law Office of Nancy S. Forster
925 Metfield Road
Towson, Maryland 21286
nsforster@gmail.com
443-790-1741

Counsel for Plaintiff

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 6th day of September, 2013, a copy of Plaintiff's Amended Compla

int for Declaratory and Injunctive Relief and Memorandum in Support of Plaintiff's Amended Complaint

for Declaratory and Injunctive Relief was mailed to Judith Barr, Assistant Attorney General, 115

Sudbrook Lane, Suite A, Pikesville, Maryland 21208.

_____/s_____
Nancy S. Forster